**B.F. GOODRICH CO., et al.**

v.

**Harold MURTHA et al.**

v.

**RISDON CORP., et al.**

**Civ. No. N–87–52 (PCD).**

United States District Court,
D. Connecticut.

Feb. 8, 1994.

See also 840 F.Supp. 180.

Barbara A. Finamore, William D. Brighton, Trial Atty., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, DC,

Philip R. Boxell, Gregory M. Keenan, Office of Regional Counsel, U.S. E.P.A., Region I, Boston, MA, Frank H. Santoro, Asst. U.S. Atty., New Haven, CT, for plaintiff U.S.

Louis R. Pepe, David E. Rosengren, Michael A. Zizka, Pepe & Hazard, Hartford, CT, John R. Cromer, Mishkin, Cromer, Eagelsfield & Maher, P.C., Indianapolis, IN, for plaintiffs B.F. Goodrich, et al.

William R. Murphy, Stanley E. Parese, Tyler, Cooper & Alcorn, New Haven, CT, Deming E. Sherman, Judith Coleback Savage, Edwards & Angell, Providence, RI, for plaintiff Uniroyal.

Kenneth Tedford, Asst. Atty. Gen., Hartford, CT, for plaintiff State of Conn.

Laura B. Frankel, Mark J. Zimmerman, Thomas J. Shortell, Elizabeth C. Barton, Updike, Kelly & Spellacy, P.C., Hartford, CT, for defendants and third-party plaintiffs Harold Murtha, et al.

Frank M. Thomas, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, Mark R. Sussman, Michael J. Donnelly, Murtha, Cullina, Richter and Pinney, Hartford, CT, for defendant Armstrong Rubber Co.

William B. Heinrich, Silverstone & Koontz, Hartford, CT, for defendant Eastern Co.

Robert Trowbridge, Trowbridge, Ide, Courtney & Mansfield, Hartford, CT, for defendant Kerite Co.

Steven L. Richards, Brian C.S. Freeman, Robinson & Cole, Hartford, CT, for defendant Gerald Metals, Inc.

### RULING RE MOTIONS FOR JUDGMENT ON THE PLEADINGS

DORSEY, District Judge.

Pending in actions by the United States [1] and the State of Connecticut [2] are motions of defendants therein, Eastern Company and Gerald Metals, Inc. and Armstrong Rubber Company, the Eastern Company and Kerite Company for judgment on the pleadings, Rule 12(c), Fed.R.Civ.P., (doc. ## 2360 and 2362). The two motions apply respectively to the claims under 42 U.S.C. § 9607 by EPA and DEP for response costs at Beacon

---

1. *United States v. Armstrong, et al,* N–88–419 and *United States v. Arco, et al,* 3:91CV00248 consolidated with N–87–52

2. *State of Connecticut v. ARCO, et al,* 3:91CV00250, consolidated with N–87–52.

Heights (BH) and Laurel Park (LP). Movants claim that the claims for response costs have been satisfied or discharged.

FACTS:

The apparently accepted facts, per the submissions of the parties related to these motions, follow. Investigation of two sites, BH and LP, was undertaken by the EPA. A consent decree requires a coalition (BHC) of PRPs, potentially responsible parties, to remedy, at BH, the discharge of hazardous substances (HS) and to pay EPA's and DEP's response costs in excess of $500,000. In a consent decree filed in court, the Murthas agreed to pay $5,375,000 to discharge their owners and operators liability at BH and LP, including contribution claims under 42 U.S.C. § 9613(f). Of the Murtha payment, enhanced by interest, at least $1,817,-500 went to BHC and $332,500 reimbursed EPA's response costs at BH, reducing EPA's unreimbursed response costs to $167,50. EPA and DEP were each repaid $625,000 for response costs at LP. EPA agreed to put aside the remaining $1,975,000 for remediation at LP under a consent decree or by EPA and DEP. There was then no consent decree or entity committed to LP's remediation. Absent such after 18 months, the principal and interest were to be paid to the United States for response costs at LP.

The State claims response costs of $2,546,-224.02, including $445,487.50 in interest and $312,766.52 in investigation expense. It has been reimbursed all but $760,125. It claims not to have received any of the $1,975,000 from the Murtha settlement. If no coalition consented to do the remediation at LP, it would have received $987,500, one-half of the $1,975,000. EPA and DEP negotiated the set aside from the Murtha settlement as incentive for a coalition to undertake the remediation at LP.

Neither EPA nor DEP presents figures for incurred response costs not covered by the net Murtha settlement, $3,500,000 after the $1,875,000 payment to BHC.

DISCUSSION:

EPA's settlements with the BHC, Murthas and LPC insulates them from claims for contribution. 42 U.S.C. §§ 9622(g)(5), (h)(4) and 9613(f)(2). The BH and LP decrees provide for reimbursement of both EPA's and DEP's future response costs.

Settlements reduce non-settlors' potential liability "by the amount of the settlement." *Id.* No agency is entitled to more than full reimbursement. Non-settlors' obligation for response costs is not shown to be reduced by an equitable proration.

The settlement here was $3,500,000, $5,375,000 less the $1,875,000 paid to BHC. Under the BH decree all future costs at BH are to be borne by the BHC. Under the LP decree, EPA is to be paid $500,000 toward its past costs and its oversight costs. EPA's and DEP's total claims are exceeded by that settlement. By allocating $1,975,000 to LP, EPA could be left with unreimbursed costs because it is not guaranteed that any remaining PRPs, non-settlors, would be found to be obliged under CERCLA. That would be a risk assumed in settling with less than all the PRPs. While CERCLA was intended to place the cost of remediation on those who created the problem by disposal of HS, the primary purpose of CERCLA was to remedy the threat to communities by insuring the remediation of the troublesome sites. Thus EPA was charged with identifying the sites of HS proliferation and those who disposed of HS at such sites. Then the scheme called for remediation either by EPA obtaining agreement by one or more PRPs to do so or by doing the job itself. 33 U.S.C. § 1321(c)(1); 42 U.S.C. §§ 9604(a)(1), 9606. EPA is to be reimbursed for its expense responding to the problem. The Superfund created working capital for EPA to fulfill its obligations, to be reimbursed by PRPs. In effect, the cost would be passed to those who either accepted liability or were held liable. Nowhere in CERCLA is there language that suspends § 9613(f) to insure 100% reimbursement. It is true that § 9607 imposes joint and several liability, on PRPs found liable, for all of the government's costs, but that section does not vitiate § 9613(f) or the credit to non-settlors of the full amount of any settlement. Settlement does not extinguish the right of reimbursement. It reduces the right of reimbursement by the amount of the settlement. The decision here is merely that what the government does

with settlement proceeds does not diminish non-settlors' right to full credit for the settlement. EPA cannot divert settlement funds for purposes it chooses and still claim reimbursement for costs covered by the settlement.

EPA simplistically argues that defendants' liability is reduced by "the monies received by the United States," ignoring the actual language of § 9613(f)(2) which reduces their liability by the "settlement." EPA's argument that defendants' claim for full credit for the Murtha settlement is "ludicrous" hardly puts forth any recognizable legal theory.

EPA and DEP argue the right to allocate part of a settlement for which non-settlors would then not be credited. Their argument ignores the fact that the Murtha settlement, apart from the amount paid to the BHC, was $3,500,000. Whatever allocation was decided on was not necessary to achieve the settlement with the Murthas because they got what they wanted, protection from claims for contribution. EPA and DEP decided what was to be done with the $3,500,000. EPA and DEP had control and thus constructive possession of the settlement. EPA and DEP argue that crediting defendants with it unfairly advantages non-settlors. By the allocation EPA and DEP would advantage other non-settlors, the members of the later formed LPC. They further ignore the fact that even if defendants are credited with the $3,500,000, if they are found liable for disposal of HS, they will be obliged for contribution toward the remediation expenses of the coalitions. The holding here would not bar EPA or DEP from claiming, from any non-settlor, reimbursement of response costs in excess of what is received from BHC, LPC and the Murthas.

DEP argues that creative structured settlements such as with the Murthas should be sustained to accomplish the purposes of the enforcement scheme. Unsaid in that argument is that the statute be ignored in the name of settlements. It ignores non-settlors' right to look at the settlement when it occurred and to receive credit, against plaintiffs' entitlement to reimbursement, in the amount of that settlement. Citation of *United States v. Cannons Engineering Corp.*, 899 F.2d 79 (1st Cir.1990), is unavailing as that case did not involve the right of non-settlors to credit in the amount of a settlement. While *Cannons* accurately discusses Congress' policy of encouraging settlement and EPA's flexibility in negotiating terms of settlement to achieve that end, there is nothing in that decision that hints, authorizes or directs the disregard of the plain language of § 9613(f) that it is the settlement that is to be credited. The right of non-settlors to that credit is ignored in plaintiffs' arguments which include consideration of only the rights of settlors, EPA and DEP.

The allocation, if not fully credited, would determine. and affect, in part, defendants' overall liability. It would impair the court's opportunity to decide overall share based on its view of the equitable factors properly applied. *See* § 9613(f)(2). EPA is not shown to be authorized by CERCLA to determine shares of the overall costs in the face of the delegation to the courts of the authority to do exactly that. While enhancement of EPA's power to settle was intended in SARA, it is not shown to have been intended that EPA also would have the power to dictate the settlement participation except that of the settling party. With no consent decree for LP, allocation of $1,975,000 to LP either hedged the bet on getting such consent (after 18 months the money would have been available for its use in the cleanup of LP) or provided an incentive for whoever would do so. The funds thus allocated would diminish the amount that a coalition would have to pay out of their own pockets to clean up LP. The question is not the propriety nor the authority of EPA and DEP to accommodate the then unanswered question of who would clean up LP. The question is whether EPA's characterization of that part of the settlement proceeds which were "placed in a registry account to fund the remedy for the Laurel Park site," Memorandum of the United States, p. 16, is controlling.

If the government is correct, it could settle successively with individual, or groups of, PRPs and allocate the money thus received to remediation such as here undertaken by LPC. Though non-settlors need not bow to EPA's settlement demands, there would be some pressure to do so, having in mind the joint and several liability of § 9607.

The word "settlement" reflects a broad concept. What the United States did with the proceeds is irrelevant. Credit must be accorded in the amount of the settlement. Two other facts are relevant to its character. Absent consent to remediate LP within 18 months, the funds would revert to EPA for that purpose. Thus to the extent of that payment, the cleanup of LP was assured. When the allocated funds were used for that purpose, they became the means by which EPA's obligation in LP was discharged. In either instance, the allocation would be credited to defendants, either as a reduction of EPA's costs if it cleaned up the site, or as an offset to the costs of a consenting party which used the funds in the cleanup and sought contribution from them. In either instance, all response/remediation costs would be allocated under § 9607 or by contribution under § 9613(f). The only amount EPA would not recoup would be any amount it absorbed voluntarily or, after accepting partial reimbursement from some PRPs, any amount it could not collect from non-settlors either for want of proof of their liability or because they were judgment proof.

EPA argues that it has discretion to allocate funds received in settlement. That question need not be answered here for a narrower question is here posed, whether EPA has discretion to choose not to receive settlement funds, immediately and directly, but, by channeling them to another use, to remove them from the settlement and from being credited in favor of PRPs later targeted. That defendants have so far made no payment toward the remediation of either site is not controlling. It cannot be assumed that any of defendants is necessarily liable for disposal of HS at either site. Ample opportunity for resolution of that liability by settlement has been afforded, and encouraged. Claims for contribution will insure that their obligation, if any, is resolved as the facts and law dictate.

EPA's claim that defendants' motions constitute a challenge to the Murtha decree is without merit. If the motions are granted there will be no effect on that decree. It would remain as found, a fair, reasonable compromise of a disputed claim. The Murthas will remain released. The government will have received its costs. The two coalitions will remain obliged to the remediation and the payments to which they are commit-

ted. LPC will have the use of the allocated amount for the LP remediation. Defendants' obligation to contribute will be decided in due course.

EPA asserts a broad settlement authority as well established in case law, but no convincing case is cited closely applicable to this case. The fact that some disputes have been settled is laudable, albeit an oasis in a desert of otherwise unrealistic approaches to compromise. Encouragement of settlement is favored but that is not to say that EPA may structure settlements which deprive a party of statutorily pronounced credits. It would have been better had the parties resolved this complex litigation by compromise, including the interrelated claims and obligations such as defendants face from EPA on the one hand and for contribution on the other. Far better that the funds referred to in *In Re Acushnet River & New Bedford Harbor*, 712 F.Supp. 1019, 1028–29 (D.Mass. 1989) be provided "to enhance environmental protection rather than [being expended] on protracted litigation." *Id.* This case has not had the benefit of that focus of the resources of the parties.

The dim view projected by the government if the motions are sustained is unwarranted. Global settlements, which resolve all claims, would better meet the purposes of all parties with an interest in clean up of a superfund site. Such would eliminate the cross-claims and counter-claims which the judicial process permits and which are inherent in CERCLA liability. Getting each party that was subject to a claim of responsibility for either or both of the two sites to accept a share reflective of the facts suggesting some degree of responsibility would be utopian. It has happened but not universally and not without considerably more expense than the adjudicated issues merited. But Congress created a scheme including the legal process which is not the epitome of efficiency in dealing with a mass of claims arising from the dumping of waste by the multitudes over the years.

The merits of recalcitrance to settle are not to be presumed. It may come from a superabundance of disregard for transgres-

sions long forgotten or ignored. It may come from a superabundance of righteousness which blames others while disregarding one's own shortcomings. Here defendants did not settle. Impliedly they had the chance. If they no longer need answer to a government made whole, they are not excused. They must answer for their conduct in claims for contribution. The government still has the ability to seek settlements which reflect provable responsibility. The claim of emasculating its flexibility if the motions are granted just simply is not true. To have settled with the Murthas, given the two interrelated but distinct sites, was sound in the face of complexity. However, the problems of this case cannot alter what the statute plainly provides. Seemingly, EPA would penalize those who delay agreeing to contribute, citing *United States v. Cannons Engineering Corp.*, 720 F.Supp. 1027, 1040 (D.Mass.1989), *aff'd*, 899 F.2d 79 (1st Cir. 1990). While unjustified recalcitrance which ignores the realities of one's transgressions may certainly be so visited, universal application of that view, without regard to the merits of what is sought in contribution, concerning which there is no record here, is unwarranted. The government's prejudgment is reflected in its equating defendants' liability to that of the coalition members. If that be the case, defendants' share of responsibility will be reflected in the determination of the level of their respective contributions shortly to be tried.

*CONCLUSION:*

For all the forgoing reasons, which deal with the arguments of plaintiffs beyond the plain language of § 9613(f)(2), defendants' motions for judgment on the pleadings (doc. ## 2360 and 2362) are granted.

SO ORDERED.